Kenneth Emmanuel HARTLEY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05-85-01206-CR to 05-85-01209-CR.

Court of Appeals of Texas, Dallas.

Feb. 8, 1989.

Rehearing Denied March 8, 1989.
Discretionary Review Refused
May 10, 1989.

Keith E. Jagmin, Dallas, for appellant.

William Randell Johnson, Dallas, for appellee.

Before McCLUNG, KINKEADE and BURNETT, JJ.

## ON REMAND FROM THE COURT OF CRIMINAL APPEALS

BURNETT, Justice.

The Texas Court of Criminal Appeals remanded this case to this Court to determine whether the trial court's submission of the unconstitutional parole law instruction mandated by section 4 of article 37.07 of the Texas Code of Criminal Procedure contributed to the punishment of Kenneth Emmanuel Hartley, appellant, as assessed by the jury. We find beyond a reasonable doubt that the submission of this instruction did not contribute to appellant's punishment; accordingly, we affirm the trial court's judgment.

To determine whether the above-mentioned parole law instruction contributed to appellant's punishment, we must conduct a harm analysis under the guidelines of rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim.App.1988) (op. on reh'g). Rule 81(b)(2) provides: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX.R.APP.P. 81(b)(2). This standard requires a review of the entire record.

A jury found appellant guilty of two counts of aggravated kidnapping, one count of aggravated sexual assault, and one count of sexual assault. The jury assessed punishment at sixty years' confinement on each of the aggravated kidnapping counts, forty years' confinement on the aggravated sexual assault count, and twenty years' confinement on the count of sexual assault.

The two complainants went to Zebo's, a nightclub in Dallas. Appellant danced with one of the complainants at Zebo's. Later, appellant and a companion accosted the complainants in the parking lot of Zebo's as the complainants were leaving. Appellant asked the complainants if they wanted to party and told them that he had cocaine. The complainants agreed and followed appellant to his apartment. Once inside the apartment, appellant ordered the complainants to undress. When the complainants refused and attempted to leave, appellant kicked and punched them. After the complainants undressed, appellant repeatedly raped them. One complainant saw appellant with a knife.

After dressing, appellant, with knife in hand, ordered the complainants into his car. Appellant drove to a wooded, secluded area, ordered the complainants out of the car, ordered them to undress, and raped one of them again. Appellant knocked one complainant out with an elbow blow to the back of her neck. Appellant knocked the other complainant out by hitting her over the head with a metal object. Appellant dragged the complainants by the hair. The complainants escaped by running away. Before escaping, one complainant quoted appellant as saying, "I'm going to get you, you little b_____. I'm going to get you. I'll kill you." The other complainant remembered appellant screaming, "Where's my f—ing gun." In the dark and chill of the night, the complainants wandered about until a passing motorist stopped and drove the complainants to a police station.

One complainant suffered a broken wrist and a broken tailbone; she also received stitches for a gash in her head. The other complainant received fifteen stitches in her head and six in her hand. Photographs of the complainants taken after their escape revealed that each suffered numerous cuts from bushes as they raced through the woods to make their escape.

Appellant pleaded not guilty by reason of insanity. The evidence revealed that from the age of two, appellant received beatings from close family members. Appellant had no prior felony convictions. Appellant expressed remorse for his actions.

Neither party mentioned the parole law during voir dire. During jury arguments, the State made one brief mention of the parole law:

Ladies and gentlemen, you leave this courtroom and you've lost all the control you have over that man. Every year you come down off of a life sentence, you're gambling with your safety and that of your families.

The judge read to you what the parole law is. All you can do is sentence him.

All four charges on punishment contained a mitigating instruction:

Further you are instructed that you are not to mention, refer to, discuss or consider how long the defendant will be required to remain in confinement to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas.

On the two counts of aggravated kidnapping, if the jury found that appellant voluntarily released the complainants alive and in a safe place, the range of punishment was two to twenty years. If the jury found that appellant did not voluntarily release the complainants alive and in a safe place, the range of punishment was five to ninety-nine years or life. The jury found that appellant did not voluntarily release the complainants alive and in a safe place and sentenced him to sixty years' confinement on both counts.

On the count of aggravated sexual assault, the range of punishment was five to ninety-nine years or life. The jury assessed punishment at forty years' imprisonment.

On the count of sexual assault, the range of punishment was two to twenty years' confinement. The jury assessed punishment at twenty years' imprisonment.

We hold that beyond a reasonable doubt the submission of the parole law instruction did not contribute to appellant's punishment. Although appellant had no prior felony convictions, appellant's crime was heinous. The statement of facts consists of six volumes and 1,213 pages. We have quoted the only reference to the parole law heard by the jury, aside from the reading of the instruction itself. Regarding the one count of sexual assault, on which appellant received the maximum sentence, although the complainant did not see a knife while being raped, the complainant knew appellant had a knife at other times, such as when appellant took the complainants from his apartment to his car and while appellant drove the car. Under these circumstances, although appellant received the maximum sentence, we hold that beyond a reasonable doubt the submission of the parole instruction did not contribute to appellant's punishment.

The judgment of the trial court is affirmed.